IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN SIEHL, | ) |
| | ) |
| Plaintiff, | ) 3:18-CV-00077-LPL |
| | ) |
| vs. | ) |
| | ) |
| CITY OF JOHNSTOWN, CAMBRIA COUNTY, DAVID TULOWITZKI, DANIEL LOVETTE, MERRILL BRANT, SCOTT ERMLICK, ANGELO CANCELLIERE, LAWRENCE WAGNER, | ) UNITED STATES MAGISTRATE JUDGE LISA PUPO LENIHAN |
| Defendants, | ) ECF NO. 232 |
| vs. | ) |
| TWIN CITY FIRE INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, and NATIONAL CASUALTY COMPANY, | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM OPINION ON DEFENDANT WESTPORT INSURANCE'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION FOR INTERLOCUTORY APPEAL

Presently before the Court is the Motion filed by Third-Party Defendant Westport Insurance Corporation ("Westport") at ECF No. 232. Westport seeks the Court's reconsideration of its June 6, 2022 determination, on cross-motions for judgment on the pleadings, that Westport has a duty to defend its insured, Cambria County, in the above-captioned Underlying Action. *See* Memorandum Opinion and Order, ECF Nos. 227 and 228, respectively. Defendant further requests, as alternative relief, that the Court certify its holding for appeal. It bases this request for relief on an assertion that the holding "forg[es] new insurance precedent" for the Commonwealth

1

and Third Circuit. ECF No. 232 at 6.  For the reasons set forth below, Defendant's Motion will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The factual and procedural history having been fully set forth in the June 6, 2022 Memorandum Opinion at issue, the Court will not repeat it at length here.  *See* ECF No. 227, Section I.  The Court notes as central to its holdings then and now:

Kevin Siehl ("Siehl") was convicted of his wife's murder on May 16, 1992 and was released in July 2016.  During Siehl's 25 years of incarceration, Westport's insured, Cambria County (including its District Attorney's Office and its Assistant District Attorney, Defendant Lovette), were called upon to make representations to the courts in the course of Siehl's post-conviction proceedings.  These included <u>representations regarding the completeness (vs. correction or supplementation) of the County's disclosure of exculpatory evidence</u> (such as forensic testing and lab and expert reports) – which were made in July 1993 in proceedings on Siehl's Motion for New Trial, and in March 2000 and <u>June 2001 in proceedings before the court on his Motion for Post-Conviction Relief</u>.  Both Motions were denied, with the PCRA petition being denied in July 2003. The Underlying Action alleges that results of laboratory tests done during Siehl's murder trial came to light during Siehl's 2009 federal habeas corpus petition proceedings before the Third Circuit and that knowledge of the laboratory reports and notes had been withheld, and false representations made, by Defendants during his post-conviction proceedings. Another post-conviction motion based on newly discovered evidence, was then granted in July 2016 and charges against Siehl dismissed a few months later.  The post-conviction court noted Defendants' dishonest participation in those proceedings, *e.g.* the insured's failure to correct false testimony or disclose material evidence.

The Underlying Action alleges that Defendants knew, should have known, or recklessly disregarded the fact that the "complete disclosure" statements were false and that as a result of those statements and the exculpatory evidence repeatedly withheld, Siehl's post-conviction motion was denied.  Siehl's claims include violations of *Brady* and his right to a fair trial by Defendants' dishonesty and failures to disclose evidence during his post-conviction proceedings. He also claims that Defendants' failure to establish proper policies/procedures for DNA testing and/or their deliberate indifference violated *Monell*.  *See id.*

Injuries and damages alleged include wrongful imprisonment, loss of freedom for the duration of incarceration, exposure to physically harmful prison conditions, economic loss, pain and suffering, mental anguish, emotional distress, and discrete traumatic personal and bodily injuries during his imprisonment.   *See* ECF No. 272, Section I.

The Westport policies at issue are two Public Entity Policies in effect from January 2001 to January 2003, providing General Liability ("GL") and Law Enforcement Liability ("LEL") coverage.  The relevant policy language includes GL coverage for liability for "damages" because of "bodily injury" caused by an "occurrence" or "personal injury" caused by a qualifying offense.  This coverage applies to bodily or personal injury that (a) is caused by an occurrence or offense that takes place in the coverage territory and (b) occurs during the policy period. The policy language also includes LEL coverage for liability for "damages" because of bodily or personal injury caused by a qualifying occurrence or offense in the course of insured's covered law enforcement activity.  Again, the coverage applies to bodily or personal injury that (a) is caused by an occurrence or offense that takes place in the coverage territory and (b) occurs during the policy period. (The Court here notes that on a plain reading the temporal policy provisions as structured refer back to the injury and not to the occurrence/offense.)  "Bodily

injury" includes injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation. "Personal injury" includes injury other than "bodily injury," arising out of one or more of offenses including (a) false arrest, detention, or imprisonment; (b) malicious prosecution; (c) mental anguish, mental injury and humiliation; and (d) deprivation of rights secured by the US Constitution. And "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  *Id.*

## II.  STANDARD OF REVIEW

As noted in the June 6, 2022 Memorandum Opinion, in Pennsylvania as in many states, the insurer's duty to defend is broader than the duty to indemnify, and arises "whenever an underlying complaint may potentially come within the insurance coverage." *Id.* (quoting S*tate Farm Fire and Cas. Co. v. Motta*, 356 F. Supp. 3d 457, 461–62 (E.D. Pa. 2018)).  The Court refers the parties to its full discussion of the applicable standards in that Memorandum Opinion.

It also observes that the duty to defend arises whenever a fair reading of an underlying complaint, with its assertions of relevant general or specific factual and statutory bases of liability, does not expressly rule out the possibility of insurance coverage under the applicable policy terms.  *See, e.g., Sikirica v. Nationwide Ins. Co*., 416 F.3d 214 (3d Cir. 2005) (discussing duty to defend where Complaint "avers facts that might support recovery"); *Air Prods. & Chems., Inc. v. Hartford Acc. & Indem. Co*., 24 F.3d 177, 179-180 (3d Cir. 1994) (observing that Pennsylvania law requires insurer of general liability policy to provide defense when allegations "could potentially fall within the coverage" and where allegations "do not establish coverage, although neither do they expressly rule it out"); *Gedeon v. State Farm Mut. Auto. Ins. Co*., 410

Pa. 55, 58 (1963).[1]  And it observes that an insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass <u>any</u> injury that is <u>actually or potentially</u> within the scope of the policy. *See, e.g. Post v. St. Paul Travelers Insur. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) ("Under Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit as long as at least one claim is potentially covered by the policy.") (citing *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828, 831 n. 1 (3d Cir.1995); *Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir.1985). *See also Chestnut Hill Academy v. Graphic Arts Mut. Ins. Co.*, 2005 WL 1715660, *4 (E.D. Pa. July 22, 2005) (providing summation of applicable standards).

### III. ANALYSIS

The Court has held that Westport has a duty to defend the County in the Underlying Action on the basis of the language of the insurance policies in place throughout calendar years 2001 and 2002.  During the interval, Siehl was incarcerated, pursuing post-conviction proceedings, and – as stated by the court during the PCR proceedings and in the Underlying Action - the County (including its Assistant District Attorney, Lovette) both (a) made false representations to the court regarding the asserted completeness of its evidentiary disclosures and (b) withheld material evidence sought.  The Underlying Action alleges that Siehl's petition for relief was denied for want of that exculpatory evidence (an allegation borne out by dismissal of charges against him once it came to light many years later) and that he suffered various bodily and personal injury as a result.  Thus, one or more claims of the Underlying Complaint, and the

---

[1] *See also, e.g., Moffat v. Metropolitan Casualty Ins. Co. of N.Y.*, 238 F.Supp. 165, 175 (M.D. Pa. 1964) (admonishing that "[i]n the inspection of the complaint to determine potential coverage, the insurer cannot take the viewpoint of a common law pleader"). *Compare* ECF No. 232 at 9.

alleged causally-associated bodily and/or personal injury, are indisputably potentially covered under the plain language of the applicable policies and Westport therefore has a duty to defend its insured. *See supra; see also e.g.* ECF No. 227, Section I (discussing PCR events of June 2001).[2] It is that clear and simple at this stage of the proceedings, and no more is required under the applicable standard.

Westport's continued objections that any claims derive from the initial malicious prosecution (the previously existing personal injury being merely prolonged), and are therefore outside its duty to defend have been considered and rejected, as have its assertion of the applicability of a "*per se* single trigger rule"[3] and its strenuously proffered analogies to cases involving, *e.g.*, liability for injuries/damages resulting purely from, or withholding of evidence during, a pre-policy malicious prosecution. *See* ECF No. 227 (citing *City of Erie, Pa. v. Guar. Nat. Ins. Co.*, 109 F.3d 156, 163 (3d Cir. 1997) (tort of malicious prosecution 'occurs' for insurance purposes at the time the underlying charges are filed rather than when claim accrues at time of acquittal)); *id.* (distinguishing *Coregis Ins. Co. v. City of Harrisburg*, 1:03-CV-920, 2006 WL 860710 (M.D. Pa. Mar. 30, 2006)). *Cf.* ECF No. 232 at 8 (citing *Appalachian Ins. Co. v.*

---

[2] As the Court's June 26, 2022 Memorandum Opinion further noted, on a plain reading of their provisions the applicable policies include a geographic restriction on occurrence or offense, and a temporal restriction on bodily and personal injury, coverage terms also supporting Westport's duty to defend. *See* ECF No. 227 (citing, *e.g.*, *Travelers Indem. Co. v. Mitchell*, 925 F.3d 236 (5th Cir. 2019) (duty to defend county in underlying wrongful conviction civil rights lawsuit, where policy provided coverage for bodily injury during policy, although wrongful causal act occurred decades prior). *See also* ECF No. 234 at 7-9 (noting the absence of a temporal restriction on occurrence in the policies at issue, and discussing cases finding bodily/personal injury occurring within a policy period at least gives rise to duty to defend under injury-based policies even if only causative "wrongful act" occurred prior to policy period); *id.* (citing *City of Elkhart v. National Cas. Co., et al.*, Case No. 20D02-1711-PL-000259 (Indiana Superior Ct. 2021) (attached as ECF No. 234-1).

The Court also notes that its potential views on other issues that may arise in later, *e.g.* remedial, stages of this litigation but are not yet before it, were unnecessary to its holding that Westport owes a duty to defend under the applicable standard. *See supra*. The Court accordingly clarifies to the parties that it reserves its resolution of any issues on which its prior Memorandum Opinion intimated initial views in *dicta*. *Cf.* ECF No. 234 at 2.

[3] This assertion is disavowed in Westport's Reply at ECF No. 235.

*Liberty Mutual Ins. Co.*, 676 F. 2d. 56, 63 (1982) as "[r]ecognizing that insurance policies" cannot "be interpreted to cover personal injury . . . in the later years when the wrongful conduct and personal injuries continue or are already known").[4]

To the contrary, in the matter *sub judice* the Underlying Action alleges separate constitutional violations, separate torts, separate invasions on Siehl's legally protected rights, that took place during the post-conviction proceedings years removed from the initial malicious prosecution, when the County had both a renewed and independent duty to participate in those proceedings (*e.g.*, by truthful representations and disclosure to that court, in that venue, at that time), a duty which it assertedly breached during Westport's policy period. *See, e.g.*, ECF No. 272 ("Mr. Siehl alleges that during his post-conviction process, 'defendant Lovette falsely misrepresented to the court on June 26, 2001, that Defendants had turned over all of the statements and police reports, and the reports from our experts as well as all of the lab reports from Mr. Ermlick.' (internal quotations omitted)") (citing ECF No. 80, ¶ 159).[5]  And the Underlying Action alleges this wrongdoing (these separate "offenses" or "occurrences" in Westport's policy language) during Westport's policy period was a proximate cause of his incarceration (vs. release) and the (patently possibly) sufficiently related injuries suffered, thereafter.[6]

Finally, Westport seeks - in the alternative to reconsideration (for "manifest error") - certification of the Court's "strident expansions of insurance law presented within the June 6

---

[4] *Compare* ECF No. 234 at 10-11 (briefly explicating the "known loss doctrine" for Westport).

[5] *Cf.* ECF No. 234 at 6 (citing *Munchinski v. Solomon*, 618 Fed. App'x 150, 154-55 (3d Cir. 2015) (prosecutors are not immune for claims that they withheld exculpatory evidence in connection with post-conviction proceedings)).

[6] *See* ECF No. 227 ("[T[he Court disagrees that there was [only one possible] proximate cause to all of Mr. Siehl's injuries").

7

Order" for interlocutory appeal. *See* ECF No. 232 at 10-11; Rule 54(b); and 28 U.S.C. § 1292(b). Section 1292(b) permits certification for appeal where the subject order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation …." Westport bears the burden of demonstrating that certification of the order for appeal is warranted and that all three of the factors identified in § 1292(b) are met. As fully explicated above, the Court has made no "manifest error" in its simple determination of Westport's duty to defend, nor has that determination implicated any "substantial ground for difference of opinion" on a "controlling question of law".[7] Application of law to the facts of a case is not a matter for discretionary certification of an otherwise unappealable order, regardless of a party's degree of disagreement or displeasure, and the challenged order is subject to review

---

[7] [T]he controlling questions of law Westport would like to present on appeal are as follows:

    1. Whether prolonged incarceration can constitute new "personal injury."
    2. Whether "but for" causation is the proper test for establishing insurance trigger of bodily injury.
    3. Whether the allegations that bodily injuries resulted from "prison conditions" can be plausibly interpreted as specific facts of proximately causation.

ECF No. 232 at 23.

The first asserted "question of law" is addressed in text, *infra.*

In reply to Westport's reading of the prior Memorandum Opinion as expressing a misguided belief that "but for" <u>rather than</u> proximate causation suffices to establish liability for the discrete bodily injur(ies) allegedly sustained in substantial consequence of Siehl's post-PCR proceedings incarceration, the Court simply notes that: (1) a determination of insurance liability for discrete bodily injuries in addition to potential liability for specified personal injuries was unnecessary to the Court's holding that Westport owes a duty to defend the Underlying Action under the applicable standard, and (2) as Westport acknowledges, the prior Memorandum Opinion "repeatedly and properly" referenced the also applicable proximate cause standard as well. (And in later stages of the litigation a parsing of the nuances in "but for" and proximate causation - both of which have been recognized in this straight-forward initial holding on duty to defend – will be provided if warranted.) *See* ECF No. 232 at 12; *see also* ECF No. 227 at 24-25 (discussing duty to defend and potential indemnification for bodily injury of hiatal hernia occurring during coverage period with reference to the proximate cause standard). In addition, as the County correctly observes, Westport's current assertions that a duty to defend on bodily injury claims lacks any basis in the allegations of the Underlying Action cannot be squared with that Action. *See* ECF No. 234 at 11-12.

in due course.[8] The Court clarifies for Westport that the question addressed in its June 6, 2022 holding was not whether prolongation of incarceration (without more) can constitute new personal injury. Rather, the Court considered: Can an Underlying Action - alleging that (1) an insured breached its legal obligation of truthful participation in Court proceedings, (2) said breach was an invasion/violation of Plaintiff's Constitutionally protected rights, and (3) was a proximate cause of Plaintiff's subsequent period of incarceration and a proximate cause of harms suffered during that incarceration – trigger a GL and LEL insurer's duty to defend the Underlying Action when both the alleged breach and one or more asserted injuries occurred within the policy coverage term?  The Court did not reach Westport's alternative conclusion – that the insurer is nonetheless relieved of its duty to defend if its insured previously violated the plaintiff's legally protected rights (in a similar manner in a different forum and under a distinct legal obligation) and that prior wrong/tort was then a proximate cause of said plaintiff's initial incarceration at that time. The Court notes the self-evident moral hazard(s) that might arise from such a conclusion.[9]  It also notes the self-evident difference between a distinct violation/tort/offense (*e.g.*, false evidence before the PCR court) giving rise to a distinct injury (*e.g.*, proximate cause of thwarted proceedings for dismissal/release) and damages (*e.g.*, proximate cause of subsequent period of incarceration) and Westport's asserted analogies. *Compare* ECF No. 232; ECF No. 235 at 4-5 (citing *Appalachian Ins. Co. v. Liberty Mutual Ins. Co.*, 676 F. 2d. 56, 63 (3d Cir. 1982) as "recognizing that insurance policies can only be

---

[8] The Court observes that assessment of whether there are "substantial grounds for difference of opinion" sufficient to its exercise of discretionary certification is not governed by whether another Court has reached a different conclusion as to the law.  Nor is a consideration of evidence of difference of opinion on a threshold legal issue informed by another Court's differing case-specific application.

[9] *Compare* Westport's claims of moral hazards created by the Court's adverse ruling.  *Cf.* ECF No. 234 at 9-10 (critiquing those claims as, among other things, "ignor[ing] the realities of" the underwriting process and coverage invalidations/prosecutions for insurance fraud.

interpreted to cover personal injury when the injury first takes place, and not in the later years when the wrongful conduct and personal injuries continue or are already known").[10]

## IV. CONCLUSION

In sum, the language of (and scope of possibilities of liability raised by) the Underlying Action, the provisions of the relevant Westport policies, and other evidence of record indicates that, under the legally appropriate interpretation/evaluation of the applicable language at issue, Westport owes a duty to defend in the Underlying Action.  Under Pennsylvania law, the interpretation of the scope of coverage of an insurance contract is a question of law properly decided and enforced by the Court.  *See, e.g., Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 469 A.2d 563, 566 (1983). *Cf., e.g., Pac. Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir. 1985) (noting that an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage); *Beckwith Machinery Co. v. Travelers Indem. Co.*, 638 F.Supp. 1179, 1186 (1986) (noting that "insurer is obligated to defend its insured fully until it can confine the possibility of recovery to claims outside the coverage of its policy").

---

[10] *See also id.* at 5 ("[T]he Third Circuit in *Appalachian* pointed out that after a 'personal injury' triggers coverage, it would make no sense for the years of repercussions to trigger new coverage.") (citing *Appalachian Ins. Co.*, 676 F.2d at 62).

As the County duly notes, the *Appalachian* court determined insurer's duty to indemnify a sexual discrimination lawsuit under an "occurrence-based" policy where the sole liability-causing event (the insured's adoption of an employment policy) and the resulting EEOC complaint predated Appalachian's policy period.  ECF No. 234 at 5-6. Similarly, and as the County also notes, *City of Erie* (another case on which Westport relies) involved a malicious prosecution held to have occurred at the time the wrongful suit was filed.  (A resultant conviction was overturned on appeal in 1983 and no post-conviction constitutional torts were alleged.)  *See id.* at 7 (distinguishing *City of Erie, Pa. v. Guar. Nat. Ins. Co.*, 109 F.3d 156 (3d Cir. 1997)); *id.* at n. 10 (further noting that there was no indication that the plaintiff was imprisoned when trial proceedings continued during insurer's 1988-95 policy period); *id.* at 7-8 (citing cases distinguishing coverage under "injury-based" (vs. "occurrence-based") policies).

Accordingly, Third-Party Defendant Westport's Motion for Reconsideration or, in the Alternative, Certification for Interlocutory Appeal, ECF No. 232, will be denied. A separate Order will issue.

DATED: September 19, 2022

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge